IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHERRYWOOD LIMITED | : | |
| PARTNERSHIP, d/b/a FUTURECARE | : | |
| CHERRYWOOD, and | : | |
| BAY MANOR NURSING HOME, INC. | : | |
| d/b/a FUTURECARE CHESAPEAKE | : | CIVIL NO. CCB-05-2947 |
| | : | |
| v. | : | |
| | : | |
| ALLIANCE PPO, LLC, et al. | : | |
| | : | |

...o0o...

**MEMORANDUM**

Cherrywood Limited Partnership d/b/a FutureCare Cherrywood and Bay Manor Nursing Home, Inc. d/b/a FutureCare Chesapeake (collectively "FutureCare") has voluntarily dismissed this suit with prejudice.[1] The only pending issue in the case is a motion by defendant United Food and Commercial Workers Union and Participating Employers Heath and Welfare Fund ("UFCW Fund") seeking attorneys' fees and costs from FutureCare pursuant to Fed.R.Civ.P. 54(d)(2) and 29 U.S.C. § 1132(g)(1). The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the defendant's motion will be denied.

I. Background

On or about June 20, 2002, FutureCare admitted "Resident A" to Bay Manor Nursing

---

[1] For sake of clarity, the remainder of this opinion will refer to FutureCare as the singular plaintiff.

1

Home.[2]  (Pl.'s Opp'n, Ex. A.)  At the time of admission, Resident A informed FutureCare that Alliance PPO, LLC ("Alliance") was the insurance company responsible for his nursing home expenses.  (*Id.*)  According to his Admission Control Worksheet, Resident A's case was to be managed by "Care Program."  (*Id.*)  FutureCare received initial authorization for the charges by Care Program, as well as reauthorization on three subsequent occasions.  (*Id.*) FutureCare provided Resident A with a total of 42 days of room and board at a rate of $400 per day, as well as $2,350.62 in pharmacy-related services.  (*Id.*, Ex. B.)  FutureCare later sent an invoice for these charges to Alliance, which did not pay the charges.  (*Id.*)

On October 29, 2004, FutureCare filed suit against Alliance in the District Court of Maryland for Anne Arundel County, although it did not serve the complaint on Alliance until March 29, 2005.  After filing a Notice of Intention to Defend, counsel for Alliance called counsel for FutureCare on April 21, 2005,[3] asserted that Alliance was not the proper payor of FutureCare's claims, and agreed to provide FutureCare with the name of the responsible health care fund.  (Affidavit of Timothy Manuelides, ¶ 5.)  After Alliance sent a letter and contract that did not contain the relevant information on June 15, counsel for FutureCare repeated its request for the information by phone on June 28 and by letter on August 2.  On August 2, counsel for Alliance sent a fax to FutureCare's counsel with a contract identifying the UFCW Fund as the responsible fund.[4]  (Pl.'s Opp'n, Ex. E.)

---

[2] FutureCare has referred to "Resident A" throughout its memorandum and has redacted identifying information from the exhibits.

[3] All subsequent dates in this opinion occurred in 2005.

[4]Alliance also identified a second fund, the Operating Engineers Local 37 Health and Welfare Fund, in connection with other invoices unrelated to Resident A, which were part of FutureCare's original claim filed in state court.  FutureCare's claims against Operating

2

The next day, August 3, FutureCare filed a motion for leave to amend its complaint in state court, and a copy of the amended complaint dated August 3 identified the UFCW Fund as a new defendant. (Amended Complaint, docket entry no. 3.) The UFCW Fund stated in its current motion that it was served with a copy of the plaintiff's motion for leave to amend at some time prior to August 24. (Def.'s Mot., at 2.) According to Timothy Manuelides, counsel for FutureCare, he called Sarah Sanchez, an associate of Slevin & Hart LLC, counsel for the UFCW Fund, on or about August 10 to discuss settlement of FutureCare's claim. (Manuelides Aff. ¶ 7.) During the call, Mr. Manuelides identified Resident A and described the claim, and Ms. Sanchez indicated that she would investigate the claim. (*Id.*)

As eventually became clear, Slevin & Hart also represents the Food Employer Labor Relations Association and United Food and Commercial Workers Unions Employers Heath and Welfare Fund ("FELRA Fund"), a different health care fund with a similar name to the UFCW Fund. Resident A's wife, through whom he receives health care coverage, is a participant in the FELRA Fund, not the UFCW Fund. Alliance's representation to FutureCare that the UFCW Fund was responsible for Resident A's charges was therefore incorrect.

According to Mr. Manuelides, he telephoned Ms. Sanchez on August 16, who advised him that she had investigated FutureCare's claim and explained that Resident A's claim was received but denied as untimely. (*Id.* ¶ 8.) She also indicated that her client was not interested in settlement.[5] On August 24, Ms. Sanchez sent Mr. Manuelides a letter that has become a

---

Engineers have been settled. (Manuelides Aff. ¶ 6, n.1.) FutureCare sought approximately $19,000 related to the care of Resident A.

[5] It is not clear whether Ms. Sanchez named the FELRA Fund during this conversation either as the fund responsible for Resident A's claim or as her client, or whether Mr. Manuelides

3

central document in the present dispute. (Def.'s Mot., Ex. C.) The letter began with a statement that the firm represents the FELRA Fund. (*Id.*) In describing the litigation, the letter stated that Alliance had "indicated that the Fund is one of the entities responsible for payment. Consequently, you have advised that your client is seeking to amend its complaint in the Lawsuit in order to add the Fund as a defendant." (*Id.*) The letter then went on to assert that FutureCare's claims were preempted by ERISA, and that if FutureCare proceeded against the fund, it would remove the suit to federal court, move to dismiss the claims, and seek attorneys' fees and sanctions. (*Id.*) The letter did not specifically state that Resident A and his wife were covered by the FELRA Fund, that the UFCW Fund was not the appropriate defendant, nor that the FELRA Fund was the correct defendant.

The state court granted FutureCare's motion to amend its complaint, and issued a summons for the UFCW Fund on September 9, which FutureCare sent to the UFCW Fund by mail. On September 28, Mr. Manuelides sent a letter to Ms. Sanchez, responding to her letter of August 24. (Pl.'s Opp'n, Ex. H.) Referring to the defendant as "the United Food and Commercial Workers Health and Welfare Fund," the letter limited itself to rebutting Ms. Sanchez's ERISA preemption arguments. (*Id.*) On September 30, the UFCW Fund received the summons and complaint. According to the UFCW Fund's motion, in response to the complaint, the UFCW Fund asked Mr. Manuelides for the identities of the relevant fund participants, and

---

clearly named the UFCW Fund. Mr. Manuelides sent an email to FutureCare on August 16, relating the substance of his discussion with "counsel for United Food Fund." (Supplemental Affidavit of Timothy Manuelides, Ex. A.)

The plaintiff submitted this supplemental affidavit as an attachment to its motion for leave to file a surreply, pursuant to Local Rule 105.2.a, which the defendant has opposed. The court finds that the plaintiff's surreply and the attached exhibits provide information materially relevant to issues raised by the defendant's reply brief; the plaintiff's motion will be granted.

4

Mr. Manuelides responded by telephone with the identities of Resident A and his wife. (Def.'s Mot., at 3.)

On October 19, Ms. Sanchez sent another letter to Mr. Manuelides. (Def.'s Mot., Ex. D.) After stating that her firm represented the UFCW Fund, it continued:

> Please be advised that the Fund is not a proper party to this lawsuit because, according to the Fund's records, the Beneficiaries mentioned in the lawsuit...are not, and never were, participants in the Fund. I specifically advised you of this fact during our telephone conversations regarding the lawsuit.

(*Id.*)  The letter then asserted that, even if suit were brought against the proper fund, ERISA still preempted all the plaintiff's claims. (*Id.*)  The letter did not discuss Resident A's relationship to the FELRA Fund, nor Ms. Sanchez's reference to that fund in her earlier letter.

According to Mr. Manuelides, he then had several telephone conversations with Ms. Sanchez or her colleagues.  First, he contacted Ms. Sanchez and requested information verifying that Resident A was not covered by the UFCW Fund. (Manuelides Aff. ¶ 11)  Ms. Sanchez responded that Resident A was covered by another fund her firm represented, and agreed to identify the fund, although she did not do so during that call itself. (*Id.*)  On or about October 24, Mr. Manuelides again contacted Ms. Sanchez to repeat his request for corroborating information, and asked whether she would consent to substituting the correct fund for the UFCW Fund, provided he received such corroboration. (*Id.* ¶ 12.)  On or about October 26, he again contacted Ms. Sanchez, who stated that her clients would not consent to any amendments before the case had been removed to federal court.[6]   (*Id.* ¶ 13.)  On October 28, the UFCW Fund

---

[6] The UFCW Fund disputes Mr. Manuelides' account of these calls, arguing that he would never have needed its consent to dismiss FutureCare's claim against it, or to add a new defendant.

5

removed the case to federal court.

On November 1, Mr. Manuelides spoke with Brian Petruska, another Slevin & Hart associate, who stated that Resident A was covered by the FELRA Fund, and Mr. Manuelides requested verification of this fact.[7] (*Id.* ¶ 14.) On November 2, Mr. Manuelides spoke with Sharon Goodman, a partner at Slevin & Hart, and repeated his request for verification of Resident A's participation in the FELRA Fund. (*Id.* ¶ 15.) Ms. Goodman responded that verification would be attached to the UFCW Fund's motion to dismiss. (*Id.*) The UFCW Fund did file such a motion to dismiss on November 4, attached to which was an affidavit by William Jensen, Administrative Manager of the UFCW Fund, asserting that Resident A and his wife were not covered by that fund. (Def.'s Mot. to Dismiss, Ex. 1.) Mr. Jensen's affidavit did not confirm their relationship to the FELRA Fund.

On November 8, Mr. Manuelides sent an email to Ms. Goodman, repeating his request for verification of Resident A and his wife's coverage under the FELRA Fund, and stating that FutureCare had authorized him to make a settlement demand "from the above fund." (Supplemental Affidavit of Timothy Manuelides, Ex. B.) Mr. Petruska replied to this email, stating that Mr. Manuelides' settlement offer had been communicated to "our client," and that a response to his request for verification would be forthcoming. (*Id.*) On November 18, Mr. Manuelides sent another email to Ms. Goodman, proposing that he recommend to FutureCare that it dismiss the case for "nuisance value," provided it was offered "a modest amount." (Def.'s Reply, Ex. A.) Finally, on November 25, FutureCare stipulated to voluntary dismissal of its case

---

[7] Mr. Manuelides also asked Mr. Petruska whether the UFCW Fund and the FELRA Fund were separate entities, and Mr. Petruska confirmed that although the funds have similar names, they are not the same. (*Id.* ¶ 14.)

6

with prejudice, which this court granted on November 28. The UFCW Fund filed the present motion on December 9.

II. Applicable Law

Fed.R.Civ.P. 54(d)(2) allows a party to file a motion for attorneys' fees under appropriate circumstances. The Employee Retirement Income Security Act (ERISA) provides that a district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g), 29 U.S.C. § 1132(g). The Fourth Circuit has emphasized that the Act places the determination of whether attorneys' fees should be awarded in an ERISA action "completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1028 (4th Cir. 1993) (en banc). The court has clarified, however, that "only a prevailing party is entitled to consideration for attorneys' fees in an ERISA action." *Martin v. Blue Cross & Blue Shield of Virginia*, 115 F.3d 1201, 1210 (4th Cir. 1997). A decision to grant or deny such fees is subject to review for abuse of discretion; accordingly, the Fourth Circuit requires a district court to explain the basis for its decision in this regard. *Quesinberry*, 987 F.2d at 1029. To guide the district court, the Fourth Circuit has adopted a test with the following five factors:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Id.* at 1029 (citing *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th

7

Cir. 1990); *see also Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). The court has emphasized that this approach is not a rigid test, but rather a set of general guidelines; in any given case, some factors may be particularly relevant, some might not be applicable, and additional considerations could be relevant. *See Quesinberry*, 987 F.2d at 1029; *see also Denzler v. Questech, Inc.*, 80 F.3d 97, 104 (4th Cir. 1996) (finding that the "bad faith factor" weighed heavily in favor of awarding costs and fees where a company acted in violation of its plan's clear terms).

III. Analysis

For the purposes of this opinion, the court will assume that the plaintiff's claim does arise under ERISA, although the plaintiff contests this issue.[8] The court will also assume that the defendant qualifies as a "prevailing party," although the plaintiff disputes the availability of attorneys' fees where a plaintiff voluntarily dismisses its case. Even under those assumptions, the court finds that the defendant is not entitled to attorneys' fees under ERISA § 502(g). Although the defendant argued that each of the five *Quesinberry* factors weighs in favor of granting it attorneys' fees, the crux of its claim is that the plaintiff acted in bad faith by continuing the suit against the UFCW Fund after it became aware that it was not the correct defendant. This contention lacks merit.

As a preliminary observation, it is apparent to the court that much of the confusion in this case has arisen from the marked similarity between the full names of the UFCW Fund and the

---

[8] The court will nonetheless note that the plaintiff had at least a nonfrivolous basis for initiating this action in state court, based on its colorable assertion that ERISA does not preempt its claims.

8

FELRA Fund. Although counsel for both parties made errors in this regard, inasmuch as the lawyers of Slevin & Hart represent both funds, some burden rests on them to anticipate potential confusion arising from this fact.

Initially, Mr. Manuelides made diligent efforts to procure from Alliance the name of the fund responsible for the charges stemming from Resident A's care, and he acted in good faith by relying on Alliance's mistaken representation that the UFCW Fund was the proper fund. None of his initial conversations with Ms. Sanchez revealed the discrepancy between the funds, as his email of August 16 confirms. The defendants argue that because Ms. Sanchez's August 24 letter referred to the FELRA Fund, it alone put Mr. Manuelides on notice that he had sued the wrong fund. The court disagrees, and finds that Mr. Manuelides was reasonable in not noting the discrepancy, particularly because the letter discussed only the ERISA defense to FutureCare's claims and did not assert that the wrong fund was being sued.

Three weeks after Slevin & Hart received the amended complaint, Ms. Sanchez sent the October 19 letter stating the UFCW Fund did not cover Resident A and thus was not a proper defendant. Mr. Manuelides, however, acted reasonably in asking for verification of this crucial piece of information; he cannot have been expected to dismiss the UFCW Fund from the suit based on this bare assertion, especially in light of the fact that Ms. Sanchez had displayed concrete knowledge of Resident A's claims in their earlier conversations. Mr. Manuelides made diligent efforts to seek verification from defendant's counsel, and contrary to defendant's suggestion, Mr. Manuelides cannot be faulted for not seeking this information instead through Resident A or Alliance.

Indeed, the court finds that defendant's counsel should have fully disclosed and clarified

Resident A's connection to the FELRA Fund earlier. Although Ms. Sanchez discussed the FELRA Fund's handling of Resident A's claim during the August 16 conversation, at that time Mr. Manuelides would have been reasonable in assuming that she was discussing the UFCW Fund. The August 24 letter likewise did not clarify the situation. By the time Ms. Sanchez wrote the October 19 letter, her prior investigation had already revealed that Resident A was covered by the FELRA Fund; this letter, however, asserted only that the UFCW Fund was not the proper defendant and made no mention of the FELRA Fund.[9] In a subsequent conversation, she told Mr. Manuelides that Resident A was covered by another fund represented by Slevin & Hart and even agreed to disclose the name, but failed to do so during the call. Defendant's counsel further refused to verify the information prior to removing the case.[10]

After the case was removed and Mr. Petruska finally told Mr. Manuelides that Resident A was covered by the FELRA Fund, it was again reasonable for him to seek verification of that fact prior to adding the FELRA Fund or dismissing the case. After Mr. Manuelides' several failed attempts at getting such verification, Ms. Goodman replied that the verification would be attached to the defendant's motion to dismiss, which did not turn out to be correct. Although Mr. Jensen's affidavit confirmed that Resident A was not covered by the UFCW Fund, it did not verify his relationship to the FELRA Fund.[11]

---

[9] Although defendant's motion suggested that it first asked for Resident A's identity after receiving the complaint on September 30th, Mr. Manuelides's August 16 email demonstrates that he provided that information in his initial conversations with Ms. Sanchez.

[10] Although it is correct that Mr. Manuelides would not have needed the defendant's permission to drop or add defendants, it was reasonable for him to seek an agreement with defendant's counsel to make the amendment by consent.

[11] In this vein, the court notes that the UFCW Fund's initial motion for an award of attorneys' fees omits any reference to the FELRA Fund or its connection to Resident A.

10

Mr. Manuelides' actions after receiving verification that the UFCW Fund was the wrong defendant were likewise not in bad faith. He did not attempt to receive a settlement from the UFCW Fund after receiving confirmation that it was not a proper defendant. His subsequent offers for settlement were clearly directed at the FELRA Fund. *See* Manuelides Supp. Aff., Ex. B.[12] It was reasonable for him to pursue such settlement negotiations prior to dismissing his case completely, as there was still the possibility of substituting the FELRA Fund as the correct defendant.[13]

In sum, the court finds that Mr. Manuelides acted in good faith in relying on Alliance's initial mistaken identification of the UFCW Fund, in not discovering the error pursuant to the August 24 letter, in seeking to verify the assertions made by defendant's counsel, and in seeking to negotiate with the FELRA Fund after the mistake was verified.

The other *Quesinberry* factors do not tilt the balance in favor of supporting an award here. FutureCare and the defendants are both capable of bearing the financial burden of the attorneys' fees, no novel or significant issue of ERISA was at issue, and defendant's actions did not substantially benefit all participants in its plan.[14] Questions of deterrence and the relative

---

[12] Ms. Goodman's mistaken assertion that Mr. Manuelides' final settlement offers were directed at the UFCW Fund is further evidence that both parties have made errors as a result of the confusing factual circumstances in this case. (Declaration of Sharon Goodman, ¶¶ 5-6.)

[13] It is unclear from the record whether defendant's counsel ever did confirm Resident A's relationship to the FELRA Fund, although Mr. Petruska's email of November 8 agreed to provide Mr. Manuelides with that information.

[14] Defendant's argument that it benefitted all the members of its ERISA plan by saving litigation costs would be true in virtually every ERISA case where a defendant plan wins. This fact alone cannot support an award of attorneys' fees. As it turned out, the defendant incurred almost $12,000 in fees, just as of filing its initial motion, in an action where only approximately $19,000 was in dispute.

11

merits of the parties' position are intertwined here with the central issues of culpability and bad faith. To the extent the plaintiff acted in good faith, an award of attorneys' fees against it would not deter similar plaintiffs.

IV. Conclusion

In light of the foregoing discussion, the court finds in its discretion that defendant UFCW Fund is not entitled to attorneys' fees and costs in this action.

A separate Order follows.

    February 28, 2006                                                                 /s/                
           Date                                                            Catherine C. Blake
                                                                        United States District Judge